*IN THE UNITED STATES DISTRICT COURT*
*FOR THE MIDDLE DISTRICT OF PENNSYLVANIA*

*New York Life Insurance Company*     :

                    *Plaintiff*          :

    *v.*                              : *Civil Case No. 3:13-CV-02110*


*Kelly O. Justofin*                   : *(Judge Richard P. Conaboy)*
*and*

*Twila Bankes as Custodian for*       :
*KRB, a Minor*


                                     :

                    *Defendants.*

---

### Memorandum

This is a diversity-based interpleader action whose object is the proper distribution of the proceeds of a life insurance policy. The insured party was Dr. Christopher D. Justofin, deceased. Competing claims for the proceeds of the aforementioned life insurance policy have been made by his estranged wife, Defendant/Cross Claimant, Kelly O. Justofin and KRB, a minor, represented by Defendant/Cross Claimant Twila Bankes, KRB's custodian.  Plaintiff New York Life Insurance Company has paid the proceeds of the policy - - $400,000.00 - - into Court and it remains for this Court to determine the proper beneficiary.  The Defendants/Cross Claimants have briefed their positions (Docs. 27

1

and 31) and this matter is now ripe for disposition.

## I.   Background.

Defendant/Cross Claimant, Kelly O. Justofin married Dr. Christopher D. Justofin on August 27, 1999.  (Doc. 27 at 3). During the duration of the marriage, specifically on July 27, 2005, Plaintiff New York Life Insurance Company issued its life insurance policy no. 48187738 on the life of Dr. Justofin.  (Id. At 1).  At all times from July 27, 2005 through July 15, 2013, Defendant/Cross Claimant Kelly O. Justofin remained the primary beneficiary under the policy.  (Id. at ¶¶ 2-4).

On July 15, 2013, Dr. Justofin executed a change of beneficiary request redesignating Twila Bankes, as custodian for KRB, as the sole beneficiary of the policy. [1]  (Id. at 2).  Five days later on July 20, 2013 Dr. Justofin took his own life before Plaintiff New York Life Insurance Company had updated its records to reflect his change of beneficiary request.  (Id. at ¶¶ 5-7).

The parties' briefs both reflect the fact that Dr. Justofin's marriage to Defendant/Cross Claimant, Kelly O. Justofin was somewhat tumultuous.  The Defendants/Cross Claimants do agree that in February of 2013 the parties had become so estranged that they

---

[1] KRB was born in September 1997 and was not yet 16 years of age at the time of Dr. Justofin's death.  Bankes acknowledges that he had been KRB's pediatrician from her birth until 2009 or 2010 when her insurance coverage was no longer accepted in Dr. Justofin's office.  (Doc. 27 at 8).  One wonders about the logic of bestowing a $400,000.00 insurance benefit on a party to whom the benefactor had previously denied medical services for lack of insurance coverage.

jointly executed a Marital Settlement Agreement (the "Agreement). Section 8 of the Agreement (Doc. 27, Exh. C, at pp. 3-8), entitled "Equitable Distribution of Assets", set forth the various types of marital property the estranged couple owned and designated which assets should belong to each party at the time of the execution of the document, February 21, 2013.

The parties' briefs contain much argument concerning the actions of Dr. Justofin in the last weeks of his life and concerning his mental state leading up to his suicide sometime between July 19, 2013 and July 22, 2013. [2] These arguments also focus on whether Dr. Justofin was abusing various controlled substances including pain medications in the weeks preceding his death. [3] Competing views have been provided of how Dr. Justofin was acting on the days leading up to his execution of the change of beneficiary request and his suicide.  The Court is invited by the parties to discern his mental status on July 15, 2013 from numerous affidavits offering starkly different assessments of his lucidity or the lack thereof on that seemingly pivotal date.  From this clatter of anecdote, none of which includes an assessment of Dr. Justofin's mental state in the relevant time period by a medical professional, the Court is invited by the parties to make a pronouncement concerning his mental status on July 15, 2013.

---

[2] The Coroner's Report (Doc. 31-4) does not posit an exact date of death.

[3] The Coroner's Report well establishes polypharmaceutical abuse at the time of death.

Depending on which brief one reads, Dr. Justofin: (a) was calm and rational on the date he executed the change of beneficiary request and legally competent to do so; or (b) was acting in a profoundly erratic and uncharacteristic manner and abusing various prescription pain-killers in the weeks leading up to his execution of the change of beneficiary request and suicide.

Fortunately, the Court need not pose as some sort of psychological sleuth deciding this case by what would amount to little more than guesswork as to which parties' affidavits are more credible.  For the reasons that follow, the Court will resolve this matter without making any determination concerning Dr. Justofin's mental status during the last weeks of his life.

## II.  Legal Discussion.

It is always a daunting challenge to ascertain an individual's mental competence at a precise moment in time because persons suffering from cognitive problems can have moments of lucidity. Estate of Angle, 777 A.2d 114, 123 (Pa. Super. 2001).  Fortunately, this case may be decided without this Court making a determination concerning Dr. Justofin's mental state in July of 2013 because the terms of the Agreement obviate the need to do so.  The Agreement executed by the parties in February of 2013 establishes clearly that, even if Dr. Justofin's mental state was one of legal competence at the time he executed the change of beneficiary request, he no longer had the legal capacity to alien Kelly

4

Justofin's interest in the policy when he purported to change his beneficiary.

Defendant/Cross Claimant Bankes recognizes that there is a presumption in the law that the party who executes a legal document has the requisite mental state to do so. (Doc. 27 at 7). There is no dispute that both Dr. Justofin and Kelly O. Justofin executed the Agreement on February 15 and 21, 2013, respectively. [4] Also, and significantly, the record is devoid of any allegation, much less any evidence, that either Dr. Justofin or his wife lacked the mental capacity on the date each signed the Agreement to be held accountable for its contents. Thus, the Court will presume that both parties to the Agreement were lucid at the time they signed it.

The Agreement, prepared by Dr. Justofin's attorney and Kelly O. Justofin, acting without benefit of counsel (see paragraph 28 of the Agreement), sets forth a clear and highly detailed scheme for allocating the parties' marital assets. The Agreement was, in many respects, beneficial to Dr. Justofin. Specifically, Section 8 of the Agreement: (1) confers sole ownership of the parties' marital residence on Dr. Justofin (see Section 8.2.2); and (2) extinguishes any claim Kelly O. Justofin had to her husband's pension or profit-sharing benefits (see Section 8.6). In addition, Section 9 of the

---

[4] Both Defendants/Cross Claimants have included the Agreement as an exhibit to their briefs and obviously rely upon its authenticity.

Agreement extinguishes any right or claim by Kelly O. Justofin to spousal support or alimony pendente lite.

In bargaining for the benefits discussed above, Dr. Justofin clearly and unequivocally agreed "that their (his and his wife's) whole life insurance policies shall be wife's sole property, including, but not limited to, any cash value in said policies." (See Section 8.5.1).   Thus, because the Agreement became effective at the date both parties executed it (see Agreement, Sections 2.2 and 2.3), Kelly O. Justofin became the equitable, if not the nominal owner of the policies on February 21, 2013.   Dr. Justofin also agreed that the "...Agreement shall remain in full force and effect even if no final decree in divorce is entered." (See Section 5). [5]   Finally, Dr. Justofin expressly agreed that "[n]o modification or waiver of any of the terms of this Agreement shall be valid unless in writing and signed by both parties." (See Section 17).

Defendant/Cross Claimant Bankes somehow has managed to make an argument (Doc. 27 at 4-5) that the Agreement supports Dr. Justofin's after-the-fact execution of the change of beneficiary request without even alluding to his explicit forfeiture of all life insurance policies in Section 8.5.1 of that Agreement.   This argument rests on the tortured logic that Section 16.1 of the

---

[5] Defendant/Cross Claimant Bankes acknowledges that the Agreement was "in effect at the time Christopher D. Justofin executed the Change in Beneficiary form in July of 2013. (Doc. 27 at 5).

Agreement, providing for mutual waivers and releases, discharged "claims by each party against the other party or their assets." Bankes' argument misses two key points.  First, the initial sentence of Section 16.1 begins with the proviso that the mutual waivers and releases defined therein are not effective with respect to assets that have otherwise been "specifically provided for in this Agreement."  The insurance policies were conspicuously and specifically allocated to Kelly O. Justofin in Section 8.5.1. Second, those insurance policies were not, after February 21, 2013, an asset belonging to Dr. Justofin.  The life insurance policy in question was acquired during the term of the marriage and, as such, became marital property that the Agreement specifically allocated to Kelly O. Justofin.  Focht v. Focht, 613 Pa. 48, 52-53 (2011)(citing Drake v. Drake, 555 Pa. 481, 491 (1999)). [6] Because Dr. Justofin had relinquished ownership of the life insurance policies, he simply had no right in July, 2013 to execute a change of beneficiary request with respect to an asset he no longer possessed.

Because the record: discloses that the parties were still married on the day Dr. Justofin died; contains no indication that either of the parties was legally incompetent at the time the Agreement was executed; and includes no proof or even an allegation

---

[6] There are eight exceptional situations in which property acquired during a marriage does not constitute marital property.  See 23 Pa. C.S.A. § 3501(a).  However, the insurance policy at issue here does not fall into any of those exceptional categories.

7

that the parties ever jointly executed a writing modifying the Agreement in any respect; the clear terms of the Agreement are legally enforceable.  It has long been the law of Pennsylvania [7] that "written instruments are not to be set aside except upon convincing testimony that their testimony was tainted with fraud, either actual or constructive, or that the person so executing them did not have what the law considers sufficient mental capacity to do so.  Weir v. Estate of Ciao 521 Pa. 491, 502 (1989)(citing Union Trust Company v. Cwynar, 388 Pa. 644 (1957).  Because the terms of the Agreement are clear and unambiguous and because there is no allegation of fraud or evidence of either parties' incapacity at the time of execution, the Court must enforce the contract.

## III. Conclusion.

For the reasons discussed above, the Court concludes that Defendant/Cross Claimant Kelly O. Justofin is the rightful beneficiary of New York Life Insurance Company policy no. 48187738. An Order consistent with this conclusion will be filed simultaneously herewith.

S/Richard P. Conaboy
Honorable Richard P. Conaboy
United States District Court

Date: March 25, 2014

---

[7] The parties expressly bargained that Pennsylvania law would control questions concerning its proper interpretation (See Agreement, Section 28).

8