*IN THE UNITED STATES DISTRICT COURT*
*FOR THE MIDDLE DISTRICT OF PENNSYLVANIA*

| | |
|---|---|
| *New York Life Insurance Company* | : |
| *Plaintiff* | : |
| *v.* | : Civil Case No. 3:13-CV-02110 |
| *Kelly O. Justofin* | : (Judge Richard P. Conaboy) |
| *and* | |
| *Twila Bankes as Custodian for* | : |
| *KRB, a Minor* | |
| *Defendants.* | : |

___

Memorandum

We consider here a Motion for Reconsideration (Doc. 38) of this Court's Order of March 25, 2014 (Doc. 36) filed by Defendant Twila Bankes.  The motion has been extensively briefed (Docs. 39, 43, 45 and 51) by the parties and is now ripe for disposition.  For the reasons that follow, Defendant Bankes' motion will be denied.

**I.   Background.**

This Court's Order of March 25, 2014 (Doc. 35) provided that the proceeds of an insurance policy that had been paid into Court by Plaintiff in Interpleader New York Life Insurance Company should be distributed to Defendant Kelly Justofin. Defendants Bankes and Justofin had made competing claims to the proceeds of the policy.  Defendant Bankes' claim was predicated on

1

a change of beneficiary form executed by decedent Christopher O. Justofin shortly before his death.  However, the Court, after thoroughly reviewing a Marital Settlement Agreement (the "Agreement") that both Defendants have included as an exhibit to their submissions and obviously recognize to be authentic and in effect at all times pertinent to this litigation, concluded that Defendant Justofin had the superior claim to the proceeds of the policy in question.

The Court had understood that the policy was a "whole life policy" and based its decision largely on the fact that § 8.5.1 of the Agreement conferred ownership of the parties' (Defendant Justofin and her now deceased husband, Dr. Christopher O. Justofin) whole life insurance policies on Defendant Justofin. It has now been brought to the Court's attention that the policy in question was a "term" policy rather than a "whole life policy". This, Defendant Bankes asserts, constitutes a "mistake of fact" by this Court that justifies a reconsideration and reversal of the Order of March 25, 2014. [1] In the alternative, Defendant Bankes requests that she be given an opportunity to conduct discovery designed to test the veracity of Defendant Justofin in regard to an alleged oral modification of the Agreement.  Because the Court does

---

[1] The Court feels compelled to note that Defendant Bankes did not apprise the Court that the policy was a "term" policy in its submissions prior to the Court's issuance of the Order of March 25, 2014.  Thus, if a "mistake of fact" has been made, Defendant Bankes must bear some responsibility therefor.

2

not reach the issue of oral modification, Defendant Bankes' request to be permitted discovery will be denied.

The Court's task now is to determine whether this "mistake" is of a character and magnitude to require issuance of an Order vesting ownership of the policy proceeds in Defendant Bankes. For the reasons that follow, the Court concludes that Defendant Bankes' Motion for Reconsideration must be denied because sound legal and equitable principles require that Defendant Justofin must prevail.

**II.  Legal Discussion.**

The parties have acknowledged that the Court has diversity jurisdiction over this case. (Doc. 1, ¶ 6; Doc. 15, ¶ 6; and Doc. 23, ¶ 6). It is axiomatic that a federal court sitting in diversity must apply the substantive law of the state in which it sits. Knapp v. North American Rockwell Corp., 506 F.2d 361, cert. denied 421 U.S. 965 (3d. Cir. 1974). The parties have also acknowledged that Defendant Justofin and her late husband were parties to a valid written Agreement and that the Agreement remained in force on the date of his death. (Doc. 27 at 5; Doc. 31 at 20-21). The Agreement contains clauses requiring that it be interpreted under the Pennsylvania Divorce Code and that the rules regarding equitable distribution of marital assets in the Commonwealth of Pennsylvania be applied. (See Agreement, ¶¶ 2.1, 4.1, 8, and 19.1 and 26).

Most significantly, Section 19.1 of the Marital Settlement

3

Agreement specifies:

> In the event of a breach of any of the provisions of this Agreement by one of the parties, the remedies available to the non-breaching party are cumulative and includes all remedies at law and in equity including those for breach of contract, under theories of equity, under the Divorce Code, as amended, including Section 3105 (which includes contempt), as if this Agreement had been an Order of the Court, and shall not be limited to those remedies specifically referred to in this Agreement.

Thus, under Section 19.1 of the Agreement, the remedies of the non-breaching party are co-extensive with all legal and equitable remedies available under Pennsylvania Law.  It follows that this Court, sitting in diversity and construing the substantive law of the Commonwealth of Pennsylvania, is vested with the power and, indeed, the obligation to enforce the clear terms of this Agreement and to fashion a remedy, legal and/or equitable to place the parties in the position that the contract had contemplated.

**III. Discussion.**

Defendant Bankes argues, essentially, that because the insurance policy in question was a term policy, Section 8.5.1 of the Agreement, which alludes only to whole life policies, cannot be

4

an appropriate basis for awarding the policy proceeds to Defendant Justofin.  The Court agrees with this point.

Defendant Bankes also argues that Section 8.1 of the Agreement requires that she be declared the rightful owner of the policy proceeds.  (Doc. 39 at 7)  Section 8.1 provides, in pertinent part:

> ...each party shall keep and retain sole ownership, control and enjoyment of all assets retained by him or her, transferred to him or her pursuant to the terms of the agreement, titled in his or her name or in his or her possession or control as of the date of the execution of this Agreement...free and clear of any claim, right or interest by the other party, and each party shall have the exclusive right to dispose of such assets without interference or restraint by the other, as if the marriage had not taken place and he or she had remained unmarried.

Because the term policy in question was not transferred to Defendant Justofin pursuant to the Agreement and because it was titled in the decedents' name and it remained in his possession after the Agreement was executed, Defendant Bankes reasons that Section 8.1 of the Agreement empowered the decedent to change the beneficiary on the policy and thus, compels distribution of the policy proceeds to her (Doc. 39 at 7). While this argument is facially plausible, it fails to account for critical and undisputed

5

facts which necessarily impact the rights of the parties to the Agreement.

The critical and undisputed facts of which we speak are these: (1) the decedent Justofin breached Paragraph 8.5.1 of the Agreement when he negotiated, for his unilateral benefit, two whole life policies with an aggregate value of more than $400,000.00 (See Doc. 51-1, ¶ 14 and Doc. 52-1, Exs. A and C); and (2) decedent Justofin negotiated these policies in clear derogation of his contractual obligation (See Agreement, ¶ 17) to do nothing contradictory to the terms of the Agreement without procuring written authorization from Defendant Justofin. [2]

Given these undisputed facts, the Court must now determine the consequences that flow from them.  Paragraph 19.1 of the Agreement empowers the Court to fashion legal or equitable remedies.  In terms of a legal remedy, it is clear that Defendant Justofin had a legitimate contractual expectation that, should her husband predecease her, she would receive $400,000.00 at a minimum through the whole life policies her husband improperly negotiated.  A contracting party's legitimate expectation interest is something that the Court must protect.  Trosky v. Civil Service Commission, City of Pittsburgh, 539 Pa. 356, 363-64, 652 A2d. 813, 817-18

---

[2] Defendant Bankes neither alleges nor contends that the Agreement was ever modified in writing or otherwise.  See Doc. 53 at 2.  Yet, she blithely ignores the reality that the contract from which she claims to benefit was breached by the party through whom she claims that benefit.  This crucially important fact is completely unaddressed in Defendant Bankes' various submissions to the Court.

(1995)(citing the Second Restatement of Contracts at Section 344). Because decedent Justofin negotiated the whole life contracts without the requisite written authorization before he died, Defendant Justofin's legitimate expectation interest pursuant to Section 8.5.1 of the Agreement was defeated to the tune of more than $400,000.00.

Defendant Bankes' tenuous rights as an incidental beneficiary of the Agreement are in direct competition with Defendant Justofin's clear contractual right to have realized the benefits of the whole life policies upon her husband's death.[3]  Incidental beneficiaries like Defendant Bankes have no legal rights under a contract. Isbrandtsen Co. V. Longshore Men's Assoc., 204 F.2d 495 (3d. Cir. 1953); also Commonwealth v. Zeid, 36 Pa. D&C 2d 101 (1964) affirmed, 211 A.2d 285 (Pa. Super. 1965).  Moreover, to allow Defendant Bankes to obtain the proceeds of the policy in question would be to allow the decedent to benefit from his breach of the Agreement.  This is simply a result that this Court cannot countenance. Thus, to fashion an appropriate legal remedy for decedent Justofin's obvious and undisputed breach of the Agreement, and pursuant to the policies underlying the doctrine of equitable distribution as stated in the Pennsylvania Divorce Code, the Court concludes that the proceeds of the policy in question must be

---

[3] We characterize Defendant Bankes as an incidental beneficiary because we have been presented no evidence to indicate that her benefit was in any way contemplated by either party at the time they entered the Agreement.

7

distributed to Defendant Justofin as a partial recovery of her proper measure of contractual damages to vindicate her legitimate expectation interest pursuant to Section 8.5.1 of that Agreement. [4]

In the alternative, with respect to a purely equitable remedy, the doctrine of constructive trust may be appropriately applied to this case. Defendant Justofin has advanced argument based on the equitable principle of constructive trust since her first submission in this case (Doc. 31 at 22-24) and renewed this argument in her Brief in Opposition to Defendant Bankes' Motion for Reconsideration (Doc. 43 at 15-16). Defendant Bankes has simply not responded to Defendant Justofin's argument in support of the imposition of a constructive trust here.

> "A constructive trust is the formula through which the conscience of equity finds expression.  When property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest, equity converts him to a trustee."

Makozy v. Makozy, 874 A.2d 1160 (Pa. Super. 2005), citing Chambers v. Chambers, 406 Pa 50 (1962). While the equitable duty to

---

[4] Defendant Justofin's damages total at least $404,050.70 representing the value of Policy No. 49 389 337 ($253,700.70) on September 28, 2012 (Doc. 52-1, Ex. A) plus the value of Policy No. 39 675 720 ($150,350.00) on December 27, 2012 (Doc. 52-1, Ex. C).  The value of the funds paid into Court by New York Life Insurance Company are not sufficient to provide Defendant Justofin with a complete recovery. (See Doc. 16). This Court can do no more than order that the total policy proceeds be distributed to Defendant Justofin.

convey property generally exists only in the presence of fraud, duress, undue influence, mistake or an abuse of a fiduciary relationship, there is "...no rigid standard for determining whether the facts of a particular case require a court of equity to impose a constructive trust; the test is merely whether unjust enrichment can be avoided."  Koffman v. Smith 682 A.2d 1282, 1291 (Pa. Super. 1996). Thus, unjust enrichment is the sine qua non to the creation of a constructive trust.

The Superior Court of Pennsylvania recognized in a closely analogous case that an agreement not to change the beneficiary of a life insurance policy, entered into by the insured individual and his designee for valuable consideration, is binding and may be enforced against subsequently named beneficiaries such as Defendant Bankes in this case.  See Torchia v. Torchia, 499 A.2d 581, 582-84 (Pa. Super. 1985).  In a situation where a claim of constructive trust has been lodged, the requisite unjust enrichment can be demonstrated against a counter party even where that counter party has not wrongfully secured a benefit but, rather, as here, has merely passively received the benefits.  Roman Mosaic & Tile Company v. Vollraph, 313 A.2d 305, 307 (Pa. Super. 1973).  In the context of these equitable principles as interpreted in the decisional law of the Pennsylvania Appellate Courts, we can conclude only that to allow Defendant Bankes to retain the benefit of decedent Justofin's breach of contract (if not outright

9

fraudulent conduct) would result in an obvious unjust enrichment that is inimical to Defendant Justofin's equitable rights under the Agreement.  Accordingly, we find that sound principles of equity compel the imposition of a constructive trust requiring that the proceeds of the policy in question must be distributed to Defendant Justofin.

### III. Conclusion.

For the aforementioned legal and equitable reasons, the Court concludes that Defendant Bankes' Motion for Reconsideration (Doc. 38) must be denied and that the proceeds of the insurance policy at issue in this case must be distributed to Defendant Justofin.  An Order consistent with this conclusion will be filed contemporaneously herewith.

BY THE COURT

                                      <u>S/Richard P. Conaboy</u>
                                      Honorable Richard P. Conaboy
                                      United States District Court

Dated: June 25, 2014